IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BARTON E. PRINCE and ANGELA W. )
PRINCE, )
                                   )
    Plaintiffs, )
                                   )
v. )   CASE NO.:   08-574
                                   )
U.S. BANK NATIONAL ASSOCIATION, )
As trustee, on behalf of the holders of the )
Home Equity Asset Trust 2007-2 Home )
Equity Pass-Through Certificates, Series )
2007-2, )
                                   )
    Defendant.

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

COME NOW Plaintiffs and submit the following Memorandum in response and opposition to the Motion to Dismiss purportedly filed on behalf of Defendant U.S. Bank National Association, As trustee, on behalf of the holders of the Home Equity Asset Trust 2007-2 Home Equity Pass-Through Certificates, Series 2007-2, ("U.S. Bank") (Doc. 9)[1].

---

[1] Plaintiffs assume that the motion was filed on behalf of the defendant herein although in its opening paragraph it is stated that the motion was filed on behalf of "Select Portfolio Servicing, Inc." If, however, the motion was not filed by the defendant is should be stricken. Representation of U.S. Bank by Select Portfolio Services would constitute the unauthorized practice of law. See, *In re Peterson*, 163 B.R. 665, 672-73 (Bankr. D. Conn. 1994) (giving legal advice is the practice of law, citing *Spanos v. Skouras Theatres Corp.*, 364 F.2d 161, 165 (2d Cir. 1966)); *Florida Bar v. Florida First Financial Serv. Group, Inc.,* 695 So.2d 275, 277-78 (Fla. 1997) (collectors enjoined from "advising others of their rights, duties or obligations" under federal or state law; from advising of the "legal consequences of their action" and from "giving legal advice"); *Andrus v. Guillot*, 160 So. 2d. 804, 806 (La. App. 1964) (giving legal advice or threatening legal proceedings is the practice of law); *In re Lyon,* 16 N.E.2d 75, 76 (Mass. 1938) ("To determine whether a law suit may properly be commenced, and therefore whether it is justifiable to commence it, requires special knowledge of the legal elements constituting a cause of action") *7 Am. Jur. 2d* Attorneys At Law, 101 at 171 n.92 (practice of law includes giving legal advice). A collection agency may refer a creditor to an attorney, provided it has no participation in the litigation or recovery thereafter. However, long-standing case law establishes that a collection agency, which interposes itself between the attorney and the creditor is engaged in the unauthorized practice of law. *Yount v. Zarbell*, 135 P.2d 309 (Wash. 1943) (preparing writs of garnishment for attorney to sign: court said the violator may not recover on any judgment by reason of professional misconduct); *State ex rel. Porter v. Alabama Ass'n of Credit Executives,* 338 So. 2d 812, 815 (Ala, 1976) (collection agency can forward to an attorney if it has no control over attorney; does not share proceeds, and decisions are made by the creditor not the agency); *J.H.*

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs have a substantive right to rescind their loan and they have properly exercised that right. This right is created by the plain language of TILA and the particular circumstances of the loan. U.S. Bank does not address in its motion the substantive issue of whether the right to rescind exists, nor does it seek dismissal based on that issue. Instead, U.S. Bank seeks dismissal of the rescission claim based solely on its speculation that Plaintiffs will not be able to satisfy whatever tender amount this Court eventually determines is due. The relief sought by U.S. Bank would require that this Court use its equitable powers to extinguish the Plaintiffs' substantive rescission right. This is inappropriate. The relief sought by U.S. Bank is contrary to the plain language of Section 1635 and the Eleventh Circuit's interpretation of this Court's power to deviate from the procedure set out in that section. Furthermore, the formation of any procedure by this Court at this stage is premature because the Court has yet to determine the facts and law necessary to fashion an appropriate remedy. Those necessary findings include (1) whether there exists a rescission right; (2) what credits are due from U.S. Bank to Plaintiffs; (3) the amount of tender due from Plaintiffs to U.S. Bank; (4) whether the equities require deviation from the procedure set out in Section 1635(b) and, if so, (5) what alternatives are appropriate under the circumstances.

### PLAINTIFFS HAVE A RIGHT TO RESCIND AND CANNOT BE PREVENTED FROM ADJUDICATING THAT RIGHT.

---

*Marshall & Assoc. v. Burleson*, 313 A.2d 587, 600 (collection agency cannot interpose itself between the creditor and the attorney); *State ex rel. Norvell v. Credit Bureau,* 514 P.2d 40, 45-46 (N.M. 1973) (preparation of court documents, management of litigation); *State ex rel. State Bar of Wisconsin v. Bonded Collections, Inc.,* 154 N.W. 2d 250 (Wis. 1967) (directing the details of the litigation); *State v. James Sanford Agency,* 69 S.W.2d 895, 898 (Tenn. 1934) ("In the performance of his legal duty and obligation, such attorney is merely an instrument by which the agency earns its commission for making collections. The agency and not the creditor is his real client"); *Med Controls, Inc. v. Hopkins*, 573 N.E.2d 154 (Ohio App. 1989) (acting as intermediary between attorney and creditor).

Consumers have an absolute right, under 15 U.S.C. § 1635, to rescind a non-purchase mortgage loan, within three days of consummation, if their principal residence is used as collateral for that loan. Furthermore, the consumer's ability to rescind such a loan may be extended for up to three years if the creditor fails to make all material disclosures. See 15 U.S.C. § 1635(f). See also *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137 (11th Cir. 1992).

U.S. Bank does not argue in its motion that a rescission right does not arise from the circumstances of the loan, nor does it seek dismissal on that point. Since the motion was filed under Fed. R. Civ. P. 12(b)(6) Plaintiffs are under no burden of proof. It should be noted, however, that several aspects of the loan transaction give rise to the rescission right, as a matter of law. For example, the TILA disclosure given the plaintiffs does not, contrary to statements made in the movant's "Statement of Undisputed Facts" ¶ 1, disclose the payment period of the loan as required by 15 U.S.C. § 1638(a)(6) and 12 C.F.R. § 226.18(g). This is not a trivial omission. Disclosure of the payment period is one of the "material disclosures" required under TILA. See 15 U.S.C. 1602(u). See also *Hamm v. Ameriquest Mortg. Co.,* 506 F.3d 525 (7th Cir. Ill. 2007), cert denied by *Ameriquest Mortg. Sec., Inc. v. Hamm*, 128 S. Ct. 1706, 170 L. Ed. 2d 513, 2008 U.S. LEXIS 2714 (U.S., 2008). It is apparently undisputed that the TILA disclosure at issue is deficient as plaintiffs state. The disclosure filed by the movant, as the first page of Exhibit 1 to its brief, does not state the payment period as required.

The facts here are remarkably similar to those in *Hamm* which were:

> The facts in these two cases are not in dispute, and so we review them here only briefly. On January 19, 2002, Hamm entered into a loan transaction secured by a mortgage with Ameriquest. On March 13, 2002, Jones did the same thing. At closing, Hamm and Jones each signed a form entitled

"Disclosure Statement" that listed a specific date as the due date for the first payment and another specific date for the final payment.

Neither Disclosure Statement ever says, in so many words, that payments will be made over a 360-month period of time. Instead, the relevant part of the forms looked like this (using Hamm's as the example):

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|
| 359 | $ 541.92 | 03/01/2002 |
| 1 | $ 536.01 | 02/01/2032 |

*Hamm* at 527.

The importance of proper disclosure was recognized by the *Hamm* Court as follows:

> In this case, Ameriquest cannot escape the fact that it committed a technical TILA violation by failing explicitly to state the payment period of Hamm's and Jones's loans on the Disclosure Statements. We do not doubt that many (or most) borrowers would understand that a mortgage with 360 payments due over approximately 30 years contemplates a payment by the borrower each month during those 30 years. But unfortunately for Ameriquest, the Disclosure Statements do not say that; they do not even say that the transaction is for a "360-month loan" or anything similar. All they say, as the table we have provided above illustrates, is that 359 payments have to be made; the first one is due on a particular date, and after all 359 payments are made, one more payment in a slightly different amount will be due on another particular date. The latter date happens to fall about 30 years after the first due date. A borrower reading this form alone would have to make assumptions and take some steps in order to determine her payment period. She could not, for example, simply postpone payments 2-359 until approximately the last year of the loan and make one payment per day. The borrower would instead have to assume that her payments were evenly spaced over the 30 years and that each payment was due on the first of the month.
>
> By contrast, punctilious compliance with TILA would require only that the Disclosure Statement contain the word "monthly" alongside the number of payments. This would be neither burdensome for the lender nor so de-tailed that the borrower would be buried in information. It serves both the goals of TILA and the needs of the borrower. As we have already noted, other forms provided to Hamm and Jones referred to a "monthly"

4

payment period, but nowhere on the Disclosure Forms was this fact mentioned. Not on the front page, not on the back page, not even in "fine print." TILA does not require people to dig through a raft of forms and make assumptions about which one is accurate and which trumps another. If the Disclosure Forms provided to Hamm and Jones had mentioned the "monthly" nature of the payments at all, we would have a different case here altogether.

*Hamm v. Ameriquest Mortg. Co.,* 506 F.3d 525, 529-530 (7th Cir. Ill. 2007)

Furthermore, Plaintiffs have alleged that the terms of the transaction, such as the Finance Change and Amount financed, were not properly disclosed. See Comp. at ¶¶ 2, 10, 18 and 19. Since a foreclosure was commenced the tolerance for these disclosures drops from ½ of 1% of the loan amount to a mere $35.00. See 15 U.S.C. § 1635(i)(2).

The relief sought by the movant is a dismissal of the rescission claim based on speculation that Plaintiffs cannot afford to make a lump sum payment of the assumed balance owed under the loan. Movant argues that this result is dictated by the discretion granted to the Court in Section 1635(b) to fashion an alternative to the procedures set out in that section. The movant is confusing the substantive legal issue facing the Court (whether there exists a right to rescind) with the procedural questions not yet presented (if there is a right, what is the amount of tender due, do circumstances exist to justify a deviation from the procedure set out in Section 1635(b) and, if so, what should be the alternative procedure).

Whether Plaintiffs have a viable rescission claim or not is a function of the nature of the loan and the plain language of the applicable provisions of TILA and Reg. Z. As set out above, the circumstances surrounding the loan clearly give rise to an extended rescission right.

Section 1635(a) unambiguously sets out the circumstances giving rise to the extended right to rescind. The Eleventh Circuit has made clear that a district court's discretion under Section 1635(b) should not be confused with a conditioning of the right of rescission. The Court clarified that the trial court's equitable powers to fashion a procedure for "effecting" the rescission remedy does not make the rescission any less "automatic" than as provided under Section 1635(a).

> Like the statute from which it was drawn almost word for word, § 226.23(d) does basically three things: first, it provides in subsection (d)(1) that rescission is automatic upon the consumer's notice; second, in subsections (d)(2) and (d)(3) it establishes a framework for the exchange of property; and third, in subsection (d)(4), it gives the courts the power to modify that framework consistent with the statutory objective. Subsection 226.23(d)(4)'s acknowledgment that the courts may modify the procedures prescribed in subsections (d)(2) and (d)(3), but not those of subsection (d)(1), is at once, then, both a recognition of the court's power to change the statutory framework for effecting rescission and a reaffirmation of the Act's intent to make rescission automatic upon notification. As one commentator has noted: "Paragraph 1 [of § 226.23(d)] simply recognizes the statutory mandate that rescission is complete at the time of notice. Paragraph 4 restates the power given to courts under § 1635(b) to modify the statutory procedures outlined in paragraphs 2 and 3. Therefore, it is clear that there is no such thing as conditional rescission. Rather, there is simply recognition of the power of the courts to modify the procedure to effect the rescission."

*Williams v. Homestake Mortgage Company,* 968 F.3d 1137, 1141- 42 (11 Cir. 1992), quoting, Daniel J. Morgan, *Rescission Under the Simplification Act: What's New (And Not So New) for Creditors*, 7 Okla.City U.L.Rev. 355, 395 n. 265 (1982)

The distinction between the substantive right of rescission and the Court's authority to fashion a procedure was also reinforced by the 2004 amendments to the Federal Reserve Board's Official Commentary to Reg. Z.

> 1. Modifications. The procedures outlined in [12 C.F.R.] § 226.23(d)(2) and (3) may be modified by a court. For example, when a consumer is in bankruptcy proceedings and prohibited from returning anything to the

6

> creditor, or when the equities dictate, a modification might be made. The sequence of procedures under § 226.23(d)(2) and (3), or court's modification of those procedures under § 226.23(d)(4), does not affect a consumer's substantive right to rescind and to have the loan amount adjusted accordingly. Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property.

69 Fed. Reg. 16,769, 16,774 (2004).

The *Williams* court also emphasized the importance of the rescission right as a pro-consumer enforcement tool, to be applied consistent with the remedial purposes of TILA.

> The sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission. Under common law rescission, the rescinding party must first tender the property that he has received under the agreement before the contract may be considered void. 17A Am.Jur.2d Contracts § 590, at 600-01 (1991). Once the rescinding party has performed his obligations, the contract becomes void and the rescinding party may then bring an action in replevin or assumpsit to insure that the non-rescinding party will restore him to the position that he was in prior to entering into the agreement, i.e., return earnest money or monthly payments and void all security interests. Id. § 604, at 610-13. Under § 1635(b), however, all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first. Thus, rescission under § 1635 "place[s] the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission." Note, Truth-in-Lending: Judicial Modification of the Right of Rescission, 1974 Duke L.J. 1227, 1234 (1974). Furthermore, because rescission is such a painless remedy under the statute (placing all burdens on the creditor), it acts as an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements.

*Id*. at 1140. The court reminds us in the exercise of the trial court's discretion to fashion a remedy "rescission must also maintain its vitality as an enforcement tool." *Id*. at 1142.

Movant asks this Court to exercise its authority under Section 1635(b) to extinguish the substantive right to rescind. This is exactly what the Eleventh Circuit held could not be done. If the law allowed what the movant proposes (the dismissal of the rescission claim upon the mere suggestion that a plaintiff can not afford a "simultaneous" lump sum tender), then the rescission right would not only lose the "automatic" nature dictated by Section 1635(a), it would also lose all "vitality as an enforcement tool." Movant's position turns this pro-consumer rescission right on its head changing it into no more than a pro-lender right to receive early pay-off of its loan while leaving its lien intact. This interpretation places the lender's interest in preserving its lien above all other considerations. The movant asks this Court to condition the rescission right on the Plaintiffs' ability to pay off the loan in lump sum while the existing lien remains in place. Plaintiffs would have to raise a lump sum payment without having any access to the equity in their home, which would have been created by the rescission. This is something few Americans would be able to do. The result of this approach would be an affront to the plain language of Section 1635(a), as well as the remedial purposes of TILA and specifically the rescission rights granted therein. In U.S. Bank's view, as long as a borrower was impoverished enough for the Court to assume he could not pay-off the lender "simultaneously" in one lump sum, there would be no rescission right at all; thus allowing the lender to avoid all consequences for its failure to comply with TILA. As long as the lender victimized the relatively poor, there would be no consequences to its actions. It would be repugnant to the purposes of TILA (not to mention its language) to adopt an interpretation which would render the rescission right meaningful only to those

wealthy consumers who happen to have enough cash in their bank accounts to pay, up front, the amount due under their mortgage in lump sum.

> Finally in a similar case a court in this district stated:
>
> [O]n the record before it the Court would decline to exercise its discretion to extinguish plaintiffs' right of rescission altogether based on the mere possibility that plaintiffs may encounter difficulty in refinancing the HLC loan. In the light most favorable to plaintiffs, the record reflects that HLC's violations were not mere technicalities or oversights, but were instead systematic omissions by HLC from the mandatory disclosures of certain finance charges pertaining to inflated fees, as well as facially unlawful pay-on-demand and prepayment penalty features. Further, as noted supra there is absolutely no reason to believe that the Williamses would be incapable of repaying the principal amount if rescission were ordered. Accordingly, weighing traditional equitable notions, and bearing in mind the twin goals of § 1635(b) of placing the consumer in a stronger bargaining position and restoring the parties to their ex ante positions, the Court declines to dismiss the Williamses' rescission claims based on inchoate, undeveloped fears that they might prove unable to repay the HLC loan if rescission is ordered. In so concluding, the undersigned finds persuasive *Jones v. Rees-Max, LLC*, 514 F. Supp.2d 1139 (D. Minn. 2007), in which the lender moved for summary judgment on the debtor's TILA and HOEPA rescission claims on the ground that the debtors had failed to demonstrate that they could tender the value of the property within a reasonable period. The *Jones* court denied summary judgment, reasoning that "it is within this Court's discretion to allow the debtor a reasonable time to pay the mortgage amount. … Given the discretion within which the Court may condition the right to rescission, it is not necessary that the [debtors] demonstrate they have the means to secure the necessary financing at this point in time." Id. at 1146. Similarly, the Eastern District of Pennsylvania recently denied a lender's motion to dismiss a borrower's TILA rescission claims because the lender, like HLC here, had failed to establish a record of the borrower's inability to return the loan proceeds or of any other relevant equitable considerations. See *Johnson*, 2007 U.S. Dist. LEXIS 50569, 2007 WL 2033833, at *5. *Jones* and *Johnson* serve to bolster this Court's determination that the showing demanded by HLC is not necessary at this juncture.
>
> *Williams v. Saxon Mortg. Co.*, 2008 U.S. Dist. LEXIS 131 (S.D. Ala. Jan. 2, 2008)

## CONCLUSION

For all the reasons stated above, the instant motion is due to be denied.

Respectfully submitted this 26th day of February 2009.

/s Earl P. Underwood, Jr.
Earl P. Underwood, Jr.
Law Offices Of Earl P. Underwood, Jr.
21 South Section Street
Post Office Box 969
Fairhope, Alabama 36533
Telephone:  (251) 990-5558
Facsimile:   (251) 990-0626

## CERTIFICATE OF SERVICE

I hereby certify that on February 26th 2009 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Shaun K. Ramey
Sirote & Permutt, P.C.
2311 Highland Ave S
Birmingham AL 35205

s/ Earl P. Underwood, Jr.
Earl P. Underwood, Jr.
