IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BARTON E. PRINCE and ANGELA W. PRINCE, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 08-00574-KD-N |
| U. S. BANK NATIONAL ASSOCIATION, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

REPORT AND RECOMMENDATION

This action is before the Court on the motion of defendants, Mortgage Electronic Registration Systems, Inc., ("MERS"), Select Portfolio Servicing, Inc., ("SPS") and U.S. Bank National Trust Association ("U.S. Bank Trust") to dismiss plaintiffs' First Amended Complaint ("FAC").  (Doc. 32) Defendants' motion is essentially predicated on the contention that  Plaintiffs' claims are premised on the erroneous assertion that they have a right to rescind their mortgage loan for violation of the Truth-in-Lending Act ("TILA")[1].  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration of the motion, Plaintiffs' response in

---

[1]  The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). When lenders violate the statute, Congress provides consumers with the right to rescind a consumer credit transaction in which a security interest is retained in the borrower's home. 15 U.S.C. § 1635(a).

opposition thereto (Doc. 45), Defendants' reply (Doc. 48) and all other pertinent portions of the record, it is recommended that the motion be denied <u>in part</u> and granted <u>in part</u> as set out herein.

1.      <u>Background</u>.

On January 26, 2007, Barton E. Prince and Angela W. Prince, Plaintiffs herein, executed a non-residential mortgage loan with Resmae Mortgage Corporation ("Resmae") in the amount of $270,000.00.  The loan was secured by their principal residence and was subsequently assigned to a mortgage pool, trust or other investment vehicle.[2]   In connection with the loan, Plaintiffs signed the Truth-in-Lending Disclosure Statement ("TILDS") which indicated that the annual percentage rate for this loan was 10.7115%; that the finance charge, described as "the dollar amount the credit [would] cost

_____

[2]Although not relevant to the present motion, the Defendants identify themselves and other related entities as follows: (1) U.S. Bank National Trust Association ("U.S. Bank Trust") "is the trustee and manages the trust which owns the loan, and now the property by virtue of foreclosure"; (2) "The trust/owner of the loan (and now property by virtue of foreclosure) are those holders of the Home Equity Asset Trust 2007-2 Home Equity Pass-Through Certificates, Series 2007-2"; (3) "MERS was created by the Mortgage Bankers Association, Ginnie Mae, Freddie Mac, and other parties in the real estate finance industry as an electronic registration and tracking system," is designated as the nominee for Resmae Mortgage Corporation on Plaintiffs' mortgage, and, as nominee, assigned the mortgage to U.S. Bank Trust "[p]rior to foreclosure" ; (3) Select Portfolio Servicing, Inc. ("SPS") is a mortgage loan servicer which "simply services the debt that is associated with this loan which includes prosecuting and defending actions against the trust that owns the loan . . . by virtue of a Power of Attorney given to it by U.S. Bank Trust and pursuant to the Pooling and Servicing Agreement which governs the U.S. Bank Trust.

[plaintiffs]," was $850,446.70; that the amount financed was $264,589.26; and the total payments, or "[t]he amount [plaintiffs] will have paid after [plaintiffs] have made all payments as scheduled," was $1,100,035.96.  (Doc. 32-2).  The TILDS document also provided the following payment schedule: 24 payments of $1,771.81 beginning Mar. 1st, 2007; 6 payments of $1,970.06 beginning Mar. 1st, 2009; 6 payments of $2,172.81 beginning Sep. 1st, 2009; 6 payments of $2,379.19 beginning Mar. 1st, 2010; 6 payments of $2,588.47 beginning Sep. 1st 2010; 311 payments of $2,620.03 beginning Mar. 1st 2011; and 1 payment of $188,020.01 on Feb. 1st, 2037.  (Doc. 32-2).

Plaintiffs contend that Resmae "failed to provide accurate TILA disclosures, understated the finance charge and used a TILA disclosure that omitted disclosure of the payment period in violation of 15 U.S.C. § 1638(a)(6) and 12 C.F.R. § 226.18(g)."  (FAC at ¶ 16)  Plaintiffs further contend that they "exercised their TILA rescission rights on June 2, 2008 based on the defective disclosures" and "notified U.S. Bank Trust of their election to rescind the loan."  (FAC at ¶ 18).  According to the Plaintiffs, U.S. Bank Trust did not respond or otherwise comply with 15 U.S.C. § 1635 after it received notice of the rescission, an allegation not contested by the Defendants.[3]

Defendants simply aver that, "[o]n July 11, 2008, MERS assigned all of its rights to Plaintiffs' mortgage to U.S. Bank National Trust Association, as Trustee, on behalf of the holders of the Home Equity Asset Trust 2007-2 Home Equity Pass-Through

---

[3]Defendants maintain throughout that the Plaintiffs have no right to rescind the loan.

Certificates, Series 2007-2."[4]  Defendants then acknowledge that "on September 29, 2008, Plaintiffs' mortgage was foreclosed by U.S. Bank Trust."  Plaintiffs contend that MERS possessed no legal interest in either the loan or the security for that loan, namely their residence, and thus could not assign any such interest to U.S. Bank Trust. Consequently, Plaintiffs argue that U.S. Bank Trust could not validly foreclose on plaintiff's mortgage.

On October 2, 2008, Plaintiffs filed this lawsuit against U.S. Bank Trust to obtain "a court determination that their loan transaction has been rescinded [and] statutory and actual damages for wrongful foreclosure, violations of TILA, plus attorney's fees and costs."  On March 4, 2009, Plaintiffs filed a First Amended Complaint which added MERS and Select Portfolio Servicing, Inc. ("SPS") as defendants and further allegations against U.S. Bank Trust.

Defendants' motion to dismiss (Doc. 32) was filed on March 30, 2009.  Discovery was stayed by the Court on April 1, 2009 (Doc. 39) pending resolution of the motion to dismiss.  Plaintiffs' opposition brief (Doc.45) was filed on April 30, 2009.  Defendants' reply (Doc. 49) was filed on May 8, 2009.

II.    Discussion.

    A.    Standard of Review

Prior to Bell Atlantic v. Twombly, 550 U.S. 544 (2007), a court could only dismiss

---

[4]The assignment by MERS to U.S. Bank Trust was not recorded in the real-estate records in Baldwin County until October 13, 2008.  (Doc. 30-3).

a complaint "if it is was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," language set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  This language as it relates to the Rule 12(b)(6) standard was expressly rejected in <u>Twombly</u> wherein the Supreme Court set forth the following standard regarding a court's determination of the sufficiency of pleading such as is in issue in this case:

> Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," <u>Conley v. Gibson</u>, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citation omitted] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555.  The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 570.  The Supreme Court recently reinforced the <u>Twombly</u> standard in <u>Ashcroft v. Iqbal</u>, – U.S. – , 129 S.Ct. 1937, 1949-50 (2009).  The Court reiterated that a claim is insufficiently pled if it offers only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'."  <u>Iqbal</u>, 129 S.Ct. at 1949, *quoting* <u>Twombly</u>, 550 U.S. at 557.  *See also*, <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3rd Cir. 2008)("After <u>Twombly</u>, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts

suggestive of [the proscribed] conduct'."), *quoting* <u>Twombly</u>, 550 U.S. at 553, n. 8.  *See also*, <u>Sinaltrainal v. Coca-Cola Co.</u>, 2009 WL 2431463 (11th Cir. Aug. 11, 2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss [*citing* <u>Iqbal</u>, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" [*quoting* <u>Twombly</u>, 550 U.S. at 570]").

It is also important to note that "[a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."  <u>McTernan v. City of York, Pennsylvania</u>, 564 F.3d 636, 646 (3rd Cir. 2009), *quoting*, <u>Phillips</u>, 515 F.3d at 231, in turn *quoting*, <u>Twombly</u>, 550 U.S. at 553, n. 8.  The Supreme Court's <u>Twombly</u> formulation of the pleading standard "'does not impose a probability requirement at the pleading stage,'" but instead "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' of the necessary element."  *Id.*, *quoting* <u>Phillips</u>, 515 F.3d at 234, in turn *quoting*, <u>Twombly</u>, 550 U.S. at 556.

B.      <u>Analysis</u>.

(1)      <u>TILA Violations</u>.

As applied to this case, Plaintiffs have sufficiently pled a claim for relief that is plausible on its face.  Plaintiffs have done more than simply allege that Defendants violated TILA, which would have constituted a vague and conclusory allegation deserving of dismissal.  Instead, Plaintiffs specifically allege that Resmae violated TILA

6

by "fail[ing] to provide accurate TILA disclosures and understated the finance charge while overstating the amount financed."  (FAC at ¶ 13).  Plaintiffs also specifically allege that "[c]ertain charges, paid by Plaintiffs incident to the extension of credit, were included in the calculation of the amount financed when they should have been included in the calculation of the finance charge" and that the "misallocation of these charges resulted in understatement of the applicable annual percentage rate." (FAC ¶ ¶ 14,15).   Plaintiffs also allege with specificity, that "the TILA disclosure form used by Resmae omits the payment period in violation of 15 U.S.C. § 1638(a)(6)."  (FAC ¶ 16).  Finally, Plaintiffs assert that, by virtue of these violations of TILA, they retained their right to rescind the loan and did so by letter to U.S. Bank Trust dated June 2, 2008.  (FAC ¶ 17 and 18).

Even if the undersigned agreed that the manner in which the payments were set forth in the disclosure statement presented to Plaintiffs satisfied TILA,[5] there still exists

---

[5]It would seem logical to assume that 24 payments of a certain amount which commenced on March 1, 2007, and were followed by 6 payments of a different amount commencing 2 years, or 24 months later, on March 1, 2009, would mean monthly statements.  However, as the Seventh Circuit succinctly held in Hamm v. Ameriquest Mortg. Co., 506 F.3d 525, 531 (7th Cir. 2007), *cert. denied*, 128 S.Ct. 1706 (2008):

> We emphasize that we are not holding that a Disclosure Form that fails to use the magic word "monthly" will always fail to comply with the requirement in § 1638(a)(6) of disclosing the payment period. The Commentary itself lists "monthly" and "bi-weekly" only as two examples of the way in which a lender might comply with the rule. The key point is that the borrower should not have to make any assumptions; she should be told her payment period in explicit terms. (For example, a Disclosure Statement that said "payment is due on the first of every month from March 1, 2002, through January 1, 2032," would effectively tell the borrower that her payment period is monthly without using the word "monthly.") Because Ameriquest's form required such

the claims concerning the miscalculation of the finance charge and the amount financed, which would constitute a violation of TILA.  *See* 15 U.S.C. §1638(2)(A)(describing the calculation of the amount financed).   Defendants' contention that these claims should be dismissed because Plaintiffs "offer no evidence in support of their allegation" misconstrues the parties respective burdens and the standard of review applicable at this juncture.  This is a motion to dismiss which requires only a determination regarding the sufficiency of the pleadings.  In other words, the Defendants are only entitled to have this action dismissed pursuant to Fed. R.Civ.P. 12(b)(6) if the Plaintiffs have "failed to **state** a claim upon which relief can be granted," (emphasis added).  It is not a motion for summary judgment which requires consideration of not only the pleadings but "discovery and disclosure materials on file and any affidavits" in order to determine the existence of any material issue of fact which would preclude judgment as a matter of law.  *See* Fed.R.Civ.P.56(c).  Consequently, Plaintiffs bore no obligation at this stage of the litigation to "prove" their TILA violation claims and their First Amended Complaint cannot be dismissed on that grounds.

(2)     Rescission Claim.

Defendants next argue that Plaintiffs' First Amended Complaint should be

---

an assumption, it did not meet TILA's requirements.

Although Plaintiffs in the case at bar may have been given more information between the first payment and last upon which to base their assumption that the designated payments were due monthly, they nonetheless were required to **make an assumption** which appears to contravene the requirements and very purpose of TILA.

dismissed due to their lack of performance, incorporating by reference the arguments

raised in a prior motion to dismiss (Doc. 32 at 12)[6].  At the heart of this argument is

Defendants' contention, contained in their earlier reply brief (Doc. 17), that:

> Defendant has indeed performed first by honoring Plaintiffs' notice of rescission. [Footnote omitted].  Defendant agreed to allow Plaintiffs to rescind the transaction and provided Plaintiffs with the proper rescission amount.  Indeed, Plaintiffs do not contest the rescission amount in their Response.  For obvious reasons, Defendant has **not removed its security interest** from the property. [Footnote omitted].  Removal of its mortgage would leave Defendant wholly unprotected if Plaintiffs, as is the case here, were unable to pay back the rescission amount.  Plaintiffs have failed to present any evidence that they have or even can acquire financing to repay Defendant.  Moreover, Plaintiffs have not presented any evidence that they could obtain financing if Defendant were to remove its security interest. [Footnote omitted].

(Doc. 17 at 4) (emphasis added).  Defendants have again placed the cart before the horse

and have ignored, in significant part, the very law they cite in their prior Reply brief

(Doc. 17).

For example, in Williams v. Saxon Mortg. Co., 2008 WL 45739 (S.D. Ala. Jan. 02,

2008), the Court held:

> Unquestionably, "[w]hen a borrower rescinds a loan, he or she must return the money borrowed." In re Porter, 961 F.2d 1066, 1077 (3rd Cir.1992). A pivotal question presented by this Motion for Summary Judgment is when. The statute delineates a specific procedure to be followed when the debtor exercises its right of rescission. In particular, § 1635(b) provides that upon

---

[6] Defendants' prior motion to dismiss (doc. 9) was denied as moot by the District Judge.  However, in so doing, the court recognized that defendants have incorporated, by reference, those arguments into Document 32 and noted that the previous arguments would be considered by the court in ruling on the instant motion to dismiss.  (See Doc. 53, p. 1, n. 1)

receipt of notice of rescission, the creditor shall return all earnest money or downpayments to the debtor and shall terminate its security interest in the property. "Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor." 15 U.S.C. § 1635(b); *see also* Belini v. Washington Mut. Bank, FA, 412 F.3d 17, 25 (1st Cir.2005) ("upon receiving a debtor's valid notice of rescission, the creditor must, within twenty days, return all money paid by the debtor and must void the security interest"). Thus, the statute contemplates a three-step sequence in which the debtor notifies the creditor of exercise of rescission rights, the creditor tenders all payments received from the debtor and terminates its security interest in the residence, and the debtor tenders the loan proceeds to the creditor. The Eleventh Circuit has explained that the "sequence of rescission and tender set forth in § 1635(b) is a reordering of common law rules governing rescission." Williams, 968 F.2d at 1140. In this context, "all that the consumer need do is notify the creditor of his intent to rescind. The agreement is then automatically rescinded and the creditor must, ordinarily, tender first." Id.FN7 The net effect of this reconfiguration of conventional rescission procedures is that the consumer is placed in a much stronger bargaining position than he or she would otherwise enjoy. *See id.*

> FN7. In that regard, one court remarked that "[i]t is apparent from the plain language of the statute that the borrower does not have to tender the proceeds of the loan before invoking her right to rescind unless and until a court decides otherwise and modifies the statutory scheme." Johnson v. Chase Manhattan Bank, USA N.A., 2007 WL 2033833, *5 (E.D.Pa. July 11, 2007).

**If the creditor fails to comply with the § 1635(b) procedure following receipt of the rescission demand, that omission constitutes a separate violation of TILA**. *See* Belini, 412 F.3d at 25 (if creditor failed to return all money paid and void security interest within 20 days after receipt of valid notice of rescission, creditor had "generally violated a 'requirement' of section 1635"); *see also* In re Hopkins, 372 B.R. 734, 751 (Bankr.E.D.Pa.2007) ("The failure to honor a valid rescission demand is itself a TILA violation ....").

2008 WL 45739 at * 3-4 (emphasis added).   The Court in Williams then addressed the

request of its defendant to "(a) order plaintiffs to prove within 30 days that they have the

wherewithal to repay the loan immediately as a single lump-sum payment, and (b) grant summary judgment in [defendant's] favor if plaintiffs fail to make such a showing."  *Id*. at 5.  The Williams Court held that defendant's request to modify the statutory procedures was inappropriate for three reasons: (1) defendant's inappropriate attempt to shift the burden of proof to the plaintiff; (2) the fact that the unrebutted evidence nonetheless presented by the plaintiffs established that there was no reason to believe suitable arrangements could not be worked out to make defendant whole within a reasonable period of time if rescission was ordered; and (3) "[g]iven the discretion within which the Court may condition the right to rescission, it is not necessary that the [debtors] demonstrate they have the means to secure the necessary financing at this point in time." 2008 WL 45739 at * 5-6, *quoting, as to the third reason,* Jones v. Rees-Max, LLC, 514 F.Supp2d 1139, 1146 (D. Minn. 2007).

Moreover, the Williams case involved a motion for summary judgment after six months of discovery, whereas the case at bar involves a motion to dismiss filed prior to any discovery by the parties by virtue of an order staying all discovery until the motion to dismiss is resolved.  Consequently, Defendants have proffered nothing more than mere speculation that the Plaintiffs are incapable of performing if rescission is ordered.[7]

---

[7] The court finds unavailing Defendants' contention that "Plaintiffs' inability to repay the borrowed funds is further evidenced by Plaintiffs' Opposition to Defendants' Motion to Require Plaintiffs to Pay Funds to the Court."  Reply Brief (Doc. 48 at 4, n. 2). Plaintiffs' Opposition was principally predicated on the applicable law that their "duty, if any, to tender funds back to the entity that is determined to have proper standing as the existing creditor, and the amount of that tender obligation, will [first] be the subject of

Defendants' argument is premature at best and, in light of their refusal to void their security interest, contrary to the statutory scheme developed to address TILA violations. As was true in <u>Williams</u>, Defendants' request for modification of the rescission procedures by essentially requiring Plaintiffs to fully repay the loan proceeds in advance of Defendants terminating their security interest in Plaintiffs' residence and reimbursing the Plaintiffs the payments made to date is premature.  The <u>Williams</u> Court found it inappropriate even at the summary judgment stage to "deviate from th[e] sensible, efficient methodology" described in official staff interpretations to TILA regulations as follows: "Where the consumer's right to rescind is contested by the creditor, a court would normally determine whether the consumer has a right to rescind and determine the amounts owed before establishing the procedures for the parties to tender any money or property."  2008 WL 45739 at * 7, *quoting* 69 Fed.Reg. 16,769, 16,774 (2004).  Such is more obviously the case here.  Only if, upon trial on the merits, the Court concludes that the Princes are entitled to rescind the loan, should the Court address the proper procedures for implementing the rescission.

      (3)    <u>Specific Causes of Action</u>.

          (a)    <u>Wrongful Foreclosure</u>.

---

discovery and determination by the Court and/or jury as to credits due to borrower and lender, and the other rights and duties of the parties."  Plaintiffs' Opposition (Doc. 46) at ¶ 3.  Plaintiffs nonetheless expressed their willingness and ability to pay "amounts each month equal to the original periodic payments" pending resolution of these issues.  *Id.*

Defendants first argue that MERS and SPS should be dismissed "because neither of these defendants conducted the foreclosure of plaintiffs' mortgage." (Doc. 32 at 12). Defendants' mere contention, however, is insufficient.   Again, Defendants' motion is premature.[8]  The role of both MERS and SPS in the foreclosure is clearly in dispute[9] and has yet to be tested through discovery.

With specific respect to MERS, Defendants argue that all claims should be dismissed "because MERS no longer had an interest in the mortgage after July 11, 2008," by virtue of its assignment to U.S. Bank Trust prior to the foreclosure.  (Doc. 32 at 18). This argument ignores not only the dispute that exists concerning the nature of the interest held by MERS prior to the alleged assignment, the nature of the interest conveyed by the assignment to U.S. Bank Trust, and the actual role MERS played throughout, but the virtually undisputed fact that the Plaintiffs exercised their right to rescission, rightly or wrongly, on June 2, 2008, prior to MERS assignment of any interest to U.S. Bank Trust.

---

[8]There has been no discovery in this case, and none of the defendants have yet filed answers to the complaints, with the exception of  SPS which, as attorney-in-fact for U.S. Bank Trust, did file a Counterclaim for Ejectment (Doc. 30), for which an Answer (Doc. 47) was filed by the Plaintiffs in which they allege, *inter alia*, "that there was no effective foreclosure because the mortgage had previously been cancelled and because the purported foreclosure was **not performed by any party having standing to foreclose**." Answer to Counterclaim (Doc. 47) at ¶ 9 (emphasis added).

[9]Plaintiffs have alleged, *inter alia*, that "SPS, MERS and U.S. Bank are engaged in and have engaged in a pattern and practice of falsifying and recording assignments of mortgages for the enabling joint ventures to foreclose on property of unsuspecting and unknowing consumers, such as Plaintiffs, illegally and without legal standing or power to foreclose." (FAC at ¶ 30).

Defendants also contend that any claim for wrongful foreclosure should be dismissed because it is predicated on a right to rescind which Plaintiffs did not possess. For the reasons stated above, this contention is also without merit.

(b)   Slander of Title.

Defendants again argue that Plaintiffs have no right to rescind and thus Defendants' foreclosure deed was properly recorded and could not constitute a slander of Plaintiffs' title. Defendants also argue that MERS and SPS did not conduct the foreclosure or take possession of the property by virtue of foreclosure and thus should be dismissed. For the reasons stated above, these arguments are without merit.

(c)   Negligence.

Defendant again argues that this claim is due to be dismissed because it is premised on Plaintiffs' "faulty demand for rescission." Again, for the reasons stated above, Defendants' contention is without merit.

(4).   Equal Credit Opportunity Act ("ECOA").

Plaintiffs' ECOA claim against the Defendants is predicated solely on their contention that plaintiffs "held and exercised a valid right to rescind the loan transaction under §1635(a) and that Defendants, rather than comply with the §1635(b) requirements, instead instituted foreclosure and did so as a result of and in retaliation for the exercising of the right to rescind." Response (Doc. 45 at 17-18, *citing* FAC ¶¶ 43-45). Plaintiffs rely on the portion of the ECOA which renders it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction - -

14

because the applicant has in good faith exercised any right under this chapter."[10] 15

U.S.C. 1691(a)(3).  Plaintiffs further rely on the Eleventh Circuit's definition of the *prima*

*facie* elements of a claim under this section:

> In order to establish a violation of § 1691(a)(3), a plaintiff must show that:
> (1) he exercised in good faith (2) a right under the Consumer Credit
> Protection Act, and (3) as a result, the creditor discriminated against him
> with respect to the credit transaction.

Bowen v. First Family Financial Services, Inc., 233 F.3d 1331, 1335 (11th Cir. 2000),

*citing* 15 U.S.C. §1691(a)(3). [11]

The issue in Bowen, however, was "how were these plaintiffs discriminated

against, and for exercising what rights?"  233 F.3d at 1335.  According to the Bowen

Court:

> An initial premise of the plaintiffs' argument in this case is that the TILA
> grants consumers a non-waivable right to litigate, individually and through
> a class action, any claims arising under the statute. This right to litigate
> TILA claims, the plaintiffs maintain, is prospectively waived by the
> arbitration agreements that First Family requires credit applicants to sign.
> Because a credit applicant would be denied credit if he declined to sign the
> arbitration agreement in order to preserve his right to litigate under the
> TILA, the plaintiffs argue that First Family discriminates against applicants
> based on a good faith exercise of their rights under the Consumer Credit

---

[10] The "chapter" refers to the Consumer Credit Protection Act of which TILA is a part.

[11] To the extent the Defendants argue that Plaintiffs have failed to state a cause of action under 15 U.S.C. § 1691(a)(1), their arguments are irrelevant.  Plaintiffs **do not** contend that they were discriminated against "with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status." 15 U.S.C. § 1691(a)(1).  Instead, Plaintiffs assert only a claim of discrimination based on a good faith exercise of their rights under TILA.  *See* 15 U.S.C. § 1691(a)(3).

> Protection Act, in violation of § 1691(a)(3) of the ECOA and its
> implementing regulation, Regulation B, 12 C.F.R. § 202.4.

*Id*.  The <u>Bowen</u> Court then observed that "there is no allegation in the complaint that the plaintiffs voiced any objection to signing the arbitration agreement."  *Id*.  Consequently, the <u>Bowen</u> Court questioned plaintiffs' allegation of discrimination:

> Even if the complaint alleged that the plaintiffs objected to the arbitration
> agreement, and even if we assume that such an objection somehow
> constitutes the requisite exercise of their rights, it is unclear what
> discrimination the plaintiffs suffered as result of that exercise of their rights.
> There is no allegation that either Bowen or Ford were refused a loan. To the
> contrary, the complaint alleges that both of them received a loan. Nor is
> there any allegation that either plaintiff paid a higher interest rate as a result
> of having objected to the arbitration clause-if they did object to it.

233 F.3d at 1335-36.  The Eleventh Circuit then held that "[i]n order to establish the discrimination element of a § 1691(a)(3) claim, it may be necessary for the plaintiff to show either that the creditor refused to extend credit to the applicant or that it extended credit but on less favorable terms."  233 F.3d at 1336.  The Court ultimately concluded that "plaintiffs cannot show that when [defendant] required them to sign an agreement to arbitrate any claims arising under the TILA, it discriminated against the plaintiffs in violated of § 1691(a)(3) because they exercised a right under the Consumer Credit Protection Act."  233 F.3d at 1338. The <u>Bowen</u> decision rested, therefore, principally on the Court's analysis of the "right" allegedly exercised by the plaintiffs.

    In contrast to <u>Bowen</u>, there is no question in the case at bar that Plaintiffs exercised a right under the statute, namely the right to rescind the loan transaction under §1635(a).  There is, however, a question about Plaintiffs' allegation that the foreclosure

was in retaliation for their rescission of the loan and that such constituted discrimination within the meaning of § 1691(a)(3).  This issue has not been directly addressed to date within the Eleventh Circuit.

In Nicholson v. Johanns, 2007 WL 3407045 (S.D. Ala. Nov. 13, 2007), the District Court addressed the ECOA in the context of a discrimination claim under §1691(a)(1).[12]  In that context, the District Court held that "[d]iscrimination on the basis of some protected class (such as race) is a vital component to plaintiffs' ECOA claim." 2007 WL 3407045 at * 5. The District Court then recognized that "Courts which have interpreted ECOA have used the same analytical framework as that used in actions pursuant to Title VII of the Equal Employment Opportunity Act, 42 U.S.C. §§ 2000e to 2000e-17" and thus applied a *prima facie* test which is not applicable to the case at bar.[13] *Id*. at * 5-6.  The Sixth Circuit has, however, addressed specifically a retaliation claim under § 1691(a)(3) which is similar to the claim asserted in this case.  Lewis v. ACB Business Services, Inc., 135 F.3d 389 (6th Cir. 1998).  In Lewis, the Sixth Circuit

---

[12]As alluded to in n. 9, *supra*, the ECOA creates a private right of action against a creditor who "discriminate[s] against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status." 15 U.S.C. § 1691(a)(1).

[13]The *prima facie* test applied to a claim under 15 U.S.C. § 1691(a)(1) is one in which the plaintiff is required "to demonstrate that (a) she is a member of a protected class, (b) she applied for and was qualified for an extension of credit, (c) despite her qualifications she was rejected, and (d) 'others of similar credit structure were extended credit or were given more favorable treatment than plaintiff'."  Nicholson, 2007 WL 3407045 at * 6, *quoting in part* Mercado Garcia v. Ponce Federal Bank, F.S.B., 779 F.Supp. 620, 628 (D. Puerto Rico 1991)

consolidated the appeals taken in two related cases which arose out of the Lewis's credit relationship with American Express Travel Related Services Company, Inc. ("Amex"). Lewis stopped making payments on his substantial debt to Amex for charges he made on his Gold Card. Three lawsuits were eventually filed, two by Lewis and one by Amex. The first suit was filed in federal court by Lewis in Dayton, Ohio ("the Dayton Case") when Amex turned the debt over to ACB Business Services, Inc. ("ACB") for collection. In that case, Lewis alleged, *inter alia*, that ACB's collection efforts violated the Fair Debt Collection Practices Act. After the Dayton case was filed, Amex sued Lewis in state court for the unpaid balance on his Gold Card. Lewis then filed suit in federal court in Cincinnati, Ohio ("the Cincinnati case") alleging, *inter alia*, that the defendants (ACB, Amex and Amex's counsel) filed the state court action in retaliation for Lewis having filed the Dayton case and thereby violated the ECOA. It is this ECOA claim in the Cincinnati case that is indistinguishable from Plaintiffs' ECOA claim in the case at bar.[14]

Applying the same framework and burden allocation system found in Title VII cases, the Sixth Circuit developed the following *prima facie* test for Lewis's ECOA claim under 15 U.S.C. § 1691(a)(3):

> [I]n order for Lewis to make out a prima facie case of retaliation, he must allege facts sufficient to show that (1) he engaged in a statutorily protected activity; (2) suffered an adverse credit action; and (3) a causal connection

---

[14]Lewis appealed the district court's granting of the defendant's motion for a judgment as a matter of law at the conclusion of the trial in the Dayton case and the dismissal of the Cincinnati case on the grounds that Amex had not discriminated against Lewis when it filed the state court suit to recover on the debt.

exists between the two.

135 F.3d at 406, *citing* Johnson v. United States Dep't of Health and Human Servs., 30

F.3d 45, 47 (6ᵗʰ Cir. 1994). The Sixth Circuit concluded that Lewis could not make such

a showing because the ECOA defines "adverse action" as::

> a denial or revocation of credit, a change in the terms of an existing credit
> arrangement, or a refusal to grant credit in substantially the amount or on
> substantially the terms requested. Such term does not include a refusal to
> extend additional credit under an existing credit arrangement where the
> applicant is delinquent or otherwise in default, or where such additional
> credit would exceed a previously established credit limit.

135 F.3d at 406, *quoting* 15 U.S.C. § 1691(d)(6). In addition, the Sixth Circuit based its

rationale on the fact that the definition of "adverse action" in the ECOA "does not include

'*[a]ny action* or forbearance relating to an account taken *in connection* with inactivity,

*default*, *or delinquency* as to that account'." 135 F.3d at 406, *quoting* 12 C.F.R. §

202.2(c)(2)(ii) (emphasis in original). The Sixth Circuit held that Amex was entitled,

even under ECOA, to sue Lewis "to recover thousands of dollars in undisputed debt that

the consumer refuses to honor" and thus did not discriminate against Lewis by filing the

state court action. 135 F.3d at 406-07. *See also*, Lombardo v. Parkview Fed. Sav. Bank,

2005 WL 1126741 (N.D. Ohio April 20, 2005)(ECOA retaliation claim dismissed under

the rationale of Lewis).

 Plaintiffs in the case at bar may ultimately succeed on their claim of wrongful

foreclosure against one or more of the defendants but they, nonetheless, have failed to

demonstrate that the foreclosure itself constituted a form of discrimination cognizable

under the ECOA, particularly absent any allegation that plaintiffs were treated differently than any other debtor similarly situated.  As the District Court in <u>Nicholson</u> surmised: "The ECOA is not a general, catch-all, prophylactic remedy allowing any disgruntled debtor to sue a creditor for any slight, real or imagined; rather, the conduct it proscribes is the discriminatory administration of a credit transaction [and] [w]ithout proof of discrimination, plaintiffs have no cognizable ECOA claim."  2007 WL 3407045 at* 5. Consequently, it is recommended that defendants' motion to dismiss Plaintiffs' ECOA claim be granted.

<b><u>CONCLUSION</u></b>

For the reasons stated above, the undersigned Magistrate Judge recommends that Defendants' motion to dismiss (Doc. 32) be granted as to Plaintiffs' ECOA claim against the defendants but denied as to all other claims.

The instructions that follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**Done** this 25th day of August, 2009.

/s/ Katherine P. Nelson<br>
<b>KATHERINE P. NELSON</b><br>
<b>UNITED STATES MAGISTRATE JUDGE</b>

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL
RIGHTS AND RESPONSIBILITIES FOLLOWING
RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.      **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of <u>court.  Failure to do so will bar a de novo</u> determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. <u>See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988); Nettles v. Wainwright, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc)</u>.  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:
2.

     A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recomme<u>ndation should be reviewed de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

     A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

3.      **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

     **Done** this 25th day of August, 2009.

                              /s/ Katherine P. Nelson
                              UNITED STATES MAGISTRATE JUDGE